MICHAEL J. HEYMAN
United States Attorney

SETH M. BEAUSANG
Assistant U.S. Attorney
U.S. Attorney's Office
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: seth.beausang@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLINTON WHITE,<br><br>Defendant. | Case No. 3:26-cv-00208-ACP<br><br>JURY DEMAND |

**COMPLAINT**

The United States alleges as follows:

**Introduction**

1.      This is an action under the under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, to recover damages and civil penalties from the defendant, Clinton White.

2.      As explained herein, White engaged in a scheme to defraud the United States Postal Service by submitting false and fraudulent claims for insurance proceeds and

refunds of postage for parcels that he had mailed.

3.      Specifically, beginning not later than around January 2020, and continuing to around April 2022, White and his company, Greatland Grocery & Supply, LLC, submitted at least approximately 277 claims to the Postal Service in which White falsely and fraudulently stated that parcels he had mailed had been lost in the mailing process.

4.      Of the approximately 277 fraudulent claims, White submitted approximately 253 claims after May 27, 2020.

5.      The claims were false and fraudulent because the parcels that White stated had been lost in the mailing process were in fact delivered to the intended recipients by the Postal Service.

6.      White knew that the parcels had been delivered by Postal Service, he acted in deliberate ignorance of that fact, and/or he recklessly disregarded that fact.

7.      Beginning around April 2020, White also engaged in a scheme to fraudulently obtain funds provided by the Coronavirus Aid, Relief, and Economic Security (CARES) Act.

8.      Specifically, on or about April 1, 2020, White submitted an application for an Economic Injury Disaster Loan (EIDL) on behalf of Greatland Grocery, in which White falsely stated that he was "not engaged in any illegal activity (as defined by Federal guidelines)." White additionally certified that all information in the application was true and correct to the best of his knowledge.

9.      On or about August 31, 2020, White also submitted an application for a grant

under the AK CARES Small Business Directed Grant Program (AK CARES) on behalf of Greatland Grocery, in which White falsely stated that he was "not engaged in any activity that is illegal under federal, state or local law."

10. On or about March 17, 2021, White also submitted an application for a loan under the Paycheck Protection Program (PPP) on behalf of Greatland Grocery, in which White falsely stated that he was "not engaged in any activity that is illegal under federal, state or local law." White additionally certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

11. Those statements were false because, as White then knew, he was engaged in a scheme to defraud the Postal Service.

12. The government seeks damages and civil penalties for White's false and fraudulent claims under the False Claims Act.

## Jurisdiction and Venue

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 31 U.S.C. § 3730(a).

14. This Court may exercise personal jurisdiction over the defendant pursuant to 31 U.S.C. § 3732(a) because any act proscribed by § 3729 occurred in the District of Alaska.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the government's claims occurred

in the District of Alaska.

## Parties

16. Plaintiff is the United States of America.

17. Defendant Clinton White was at all relevant times a resident of the State of Alaska. Until around April 2022, White was the sole owner, manager, and member of Greatland Grocery & Supply, LLC, a domestic limited liability company organized under the laws of the State of Alaska. Upon information and belief, White currently resides in North Carolina.

## False Claims Act

18. The False Claims Act, 31 U.S.C. § 3729(a)(1)(A) and (B), provides, in pertinent part, that a person who does any of the following is liable for three times the amount of the government's damages and mandatory civil penalties:

 a. knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

 b. knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

19. "Knowingly," for purposes of the False Claims Act, does not require proof of specific intent to defraud. Instead, knowingly means that a person:

 a. has actual knowledge of the information;

 b. acts in deliberate ignorance of the truth or falsity of the information; or

c.     acts in reckless disregard of the truth or falsity of the information.

31 U.S.C. § 3729(b)(1).

## CARES Act

20.     On March 27, 2020, the CARES Act, Pub. L. 116-136, became law and provided emergency financial assistance for individuals, families, and businesses affected by the COVID-19 pandemic.

21.     The EIDL program is a Small Business Administration (SBA) program that provides low-interest loans of up to $2 million to small businesses, renters, and homeowners in regions affected by declared disasters.

22.     Section 1110 of the CARES Act authorized SBA to, among other things, waive certain requirements for eligible EIDL borrowers for loans made in response to the COVID-19 pandemic. Section 1110 also authorized SBA to issue advances of up to $10,000 to small businesses within three days of receiving an application for an EIDL based on the applicant's certification that the applicant is eligible. The advances do not have to be repaid.

23.     An EIDL applicant was required to certify certain information, including that the applicant was "not engaged in any illegal activity (as defined by Federal guidelines)," and was also required to certify that all information in the application was true and correct to the best of the applicant's knowledge. The application included warnings that any false statement or misrepresentation to the SBA may result in criminal and civil penalties.

24.     Under SBA rules, any business "engaged in any illegal activity" is not

eligible for an EIDL. *See* 13 C.F.R. § 123.301 (excluding from eligibility any business that fit in any of the categories in 13 C.F.R. § 123.201) & 13 C.F.R. § 123.201(d) ("You are not eligible if your business is engaged in any illegal activity.").

25. Section 5001 of the CARES Act established the Coronavirus Relief Fund, which provided $150 billion in general assistance to domestic governments.

26. The State of Alaska used a portion of the funds it received from the Coronavirus Relief Fund to establish the AK CARES program, under which the Alaska Department of Commerce, Community, and Economic Development provided grants to small Alaskan businesses impacted by the COVID-19 pandemic if they met the eligibility criteria. Grant amounts ranged between $5,000 and $100,000 based on the business's expenses.

27. Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of loans under § 7(a) of the Small Business Act. This new program, called the PPP, authorized loans to eligible small businesses struggling to pay employees and other business expenses because of the COVID-19 pandemic.[1]

28. To obtain a PPP loan, a qualifying business was required to submit an application signed by an authorized representative of the business. Applicants were

---

[1] On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act, Pub. L. 116-139, became law and provided additional funding and authority for the PPP. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020, Pub. L. 116-142, became law and changed key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

*United States v. Clinton White*
3:26-cv-_____            Page 6 of 17

required make certain certifications, including that the applicant was "not engaged in any activity that is illegal under federal, state or local law." The applicant was also required to certify "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects," under warnings of criminal and civil penalties.

29.     Under SBA rules, any business "engaged in any activity that is illegal under Federal, State, or local law" is not eligible for a PPP loan. 13 C.F.R. § 120.110(h).

30.     PPP loan applications were received and processed, in the first instance, by a participating financial institution, and then transmitted for further review to the SBA to assess the applicant's eligibility. If an application was approved, the participating financial institution would fund the PPP loan using its own monies. The SBA guaranteed loans funded under the PPP and paid the lender fees to financial institutions for financing the loans.

31.     Once the PPP loan proceeds were spent, the borrower could apply to the SBA for loan forgiveness.

32.     SBA was authorized to forgive the interest and principal owed on a loan if the business spent the loan proceeds on certain authorized expenses within a designated period of time and used at least a minimum amount of the loan proceeds towards payroll expenses for the business. Forgiveness of the loan entailed the SBA paying the full loan amount and accrued interest to the lending institution.

## Background

33. White formed Greatland Grocery on January 1, 2018.

34. During the time White operated Greatland Grocery, the business utilized the Postal Service to mail parcels containing groceries to various locations in Alaska, including rural locations, for a fee.

35. In or around April 2022, White purportedly sold Greatland Grocery to David Johnston, a resident of the State of Alaska.

36. Upon information and belief, Johnston operated Greatland Grocery through his business DJ Johnston Management, Inc., from approximately April 14, 2022, until December 31, 2023.

37. On July 1, 2023, White voluntarily dissolved Greatland Grocery by filing articles of dissolution with the State of Alaska.

## The Postal Service Fraud Scheme

38. Customers or businesses can receive insurance on packages mailed through the Postal Service. The Postal Service offers up to $5,000 of insurance coverage as protection against loss or damage of customers' packages. Some domestic products (i.e., Priority Mail and Priority Mail Express) offer free insurance, generally at $100 or less.

39. If an insured item is lost or damaged, the customer may request compensation by filing a claim through the Postal Service's Customer Inquiry and Claims Response System (CICRS). If the Postal Service approves a claim, it pays the maximum insurance coverage amount or the value of the lost or damaged item, whichever is less.

40.     Claims above a certain dollar threshold are reviewed manually by the Postal Services, but below that threshold they are reviewed only with software that pays claims based on simple criteria, such as whether a tracking number exists, or proof of delivery scans.

41.     In June 2021, the Postal Service reviewed its databases regarding claims White submitted for parcels he mailed to postal box addresses at the Chignik Lake Contract Post Office (CPO) between March 2020 and March 2021. Chignik Lake is a small village located in rural, southwest Alaska.

42.     The data showed that, between March 2020 and March 2021, White submitted 49 insurance claims for parcels he mailed to postal box addresses at the Chignik Lake CPO. In each claim White stated the reason for the claim was: "article not delivered."

43.     The tracking for each parcel showed "In Transit," which indicates that the parcel had not been scanned as delivered. However, it is common for parcels to not be scanned when they are delivered to rural locations in Alaska.

44.     The Postal Service paid each claim through checks issued to Greatland Grocery which were subsequently cashed by Greatland Grocery.

45.     On or about July 9, 2021, special agent(s) with the USPS Office of Inspector General (OIG) conducted interviews with several residents of Chignik Lake who White had mailed the 49 parcels. The residents of Chignik Lake interviewed stated that, in fact, they always received their parcels from Greatland Grocery.

46.     For example, one resident, B.A./B.O., stated that they had lived in Chignik

Lake and received mail there in 2020 and 2021. B.A./B.O. stated that they had regularly ordered from Greatland Grocery and never failed to receive their parcels within two to three days.

47. The CICRS data showed that, in 2020 and 2021, White submitted at least 17 insurance claims for parcels mailed to B.A./B.O. at the Chignik Lake CPO. In each case, White stated the reason for the claim was: "article not delivered."

48. Another resident, N.L., stated that they ordered from Greatland Grocery "all the time," and their packages always arrived. If they ever had any issues, they knew they could call "Clinton" at Greatland and he would fix it. N.L. had Clinton's number written down and was confident from experience he would resolve any issue N.L. had, based on how frequently they had ordered from the company.

49. The CICRS data showed that, in 2020 and 2021, White submitted 20 insurance claims for parcels mailed to N.L. at the Chignik Lake CPO. In each case, White stated the reason for the claim was: "article not delivered."

50. Another resident, D.L., stated that they ordered from Greatland Grocery and never had problems receiving their orders.

51. The CICRS data showed that, in 2020 and 2021, White submitted at least 13 insurance claims for parcels mailed to D.L. at the Chignik Lake CPO. In each case, White stated the reason for the claim was: "article not delivered."

52. Another resident, M.K., stated that they ordered from Greatland Grocery and never had problems receiving their orders.

53. The CICRS data showed that, in 2020 and 2021, White submitted at least 10 insurance claims for parcels mailed to M.K. at the Chignik Lake CPO. In each case, White stated the reason for the claim was: "article not delivered."

54. White submitted supporting documents to the Postal Service with his insurance claims showing that Greatland Grocery customers regularly purchased between $100 and $400 worth of groceries for delivery, with many orders over $500 and one over $1,000. Yet, White did not purchase insurance for the parcels and was always paid the amount of free insurance provided by the Postal Service plus postage, which always totaled less than $200.

55. On at least two instances White uploaded letters in support of claims which the Postal Service initially denied. The letters were nearly identical and claimed Greatland Grocery had "unaccounted" and "lost" packages go missing, stating, "We ship a large volume of packages with USPS and we have had numerous packages that have been lost…" The letters only mentioned tracking numbers as evidence, not customer complaints or refunds that Greatland Grocery had to issue for missing parcels.

56. In August and September 2021, USPS OIG special agent(s) interviewed approximately 36 additional residents of rural Alaska villages who had been mailed parcels by Greatland Grocery. Only one person recalled ever having an order possibly not show up, but they were uncertain because they ordered so frequently. Another 16 people mentioned occasional or isolated incidents where weather, airlines delays or mishandling led to damaged or spoiled perishable food items, but not items never arriving. The feedback

Case 3:26-cv-00208-ACP    Document 1    Filed 05/26/26    Page 11 of 17

from the Greatland Grocery customers was generally very positive. Customers were quick to relay how frequently and routinely they ordered from Greatland Grocery, how reliable Greatland was at packing, shipping, and customer service, and how their communities relied on their consistent food deliveries over the years. The interviews were not at all reflective of a pattern of missing parcels paid for by customers and never delivered.

57.  The CICRS data showed that in 2020 and 2021, White submitted approximately 277 insurance claims for parcels mailed to addressees in Alaska. In each case, White stated the reason for the claim was: "article not delivered."

58.  The 41 Greatland Grocery customers interviewed by USPS OIG special agent(s) accounted for 129 of the 277 parcels that White claimed had been lost. The interviews established that, at most, one of those customers might have had one order not arrive.

59.  The CICRS data further showed that White filed claims for at least 72 parcels, asserting for each "article not delivered," when in fact those parcels had been scanned as "delivered" or "arrival at unit."

60.  White's false statements were material because, had White truthfully disclosed that the parcels were in fact delivered, the Postal Service would not have paid White insurance proceeds and postage.

61.  The approximately 253 false and fraudulent claims that White submitted after May 27, 2020, caused the Postal Service to pay Greatland Grocery approximately $31,475.68.

## The CARES Act Fraud Scheme

62. On or about April 1, 2020, White submitted EIDL application number 3600463115 on behalf of Greatland Grocery.

63. In the EIDL application, White falsely stated that he was "not engaged in any illegal activity (as defined by Federal guidelines)." White additionally certified that all information in the application was true and correct to the best of his knowledge.

64. On or about April 24, 2020, SBA paid Greatland Grocery a $1,000 EIDL advance pursuant to White's application.

65. On or about August 31, 2020, White submitted AK CARES application number 203165 on behalf of Greatland Grocery.

66. In the AK CARES application, White falsely stated that he was "not engaged in any activity that is illegal under federal, state or local law."

67. On or about October 15, 2020, the Alaska Department of Commerce, Community, and Economic Development paid Greatland Grocery a $30,000 grant pursuant to White's application.

68. On or about March 17, 2021, White submitted PPP application number 26642924 on behalf of Greatland Grocery.

69. In the PPP application, White falsely stated he was "not engaged in any activity that is illegal under federal, state or local law." White additionally certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

70.     On or about March 17, 2021, Alaska USA Federal Credit Union paid Greatland Grocery a PPP loan in the amount of $20,833 pursuant to White's application. In connection with the loan, SBA paid Alaska USA $2,579.34 in lender fees.

71.     On or about August 3, 2021, SBA forgave Greatland Grocery's loan in the amounts of $20,833 of principal and $79.34 of interest.

72.     The above statements in White's EIDL, AK CARES, and PPP applications were false because, as White then knew, he was engaged in a scheme to defraud the Postal Service.

73.     Those statements were material because, had White truthfully disclosed that he was then engaged in a scheme to defraud the Postal Service, Greatland Grocery would not been approved for an EIDL advance, AK CARES grant, or PPP loan.

### COUNT I: POSTAL SERVICE FRAUD SCHEME
### (False Claims Act, 31 U.S.C. § 3729(a)(1)(A) & (B))

74.     Paragraphs 1 through 73 are realleged.

75.     In connection with the Postal Service Fraud Scheme, White:

a.     knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval;

b.     knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.

76.     White's false statements made in connection with the Postal Service Fraud Scheme were material.

77.     White thereby violated the False Claims Act, damaged the United States in

amount to be proven at trial, and owes the United States treble its damages and civil penalties for each false and fraudulent claim.

## COUNT II: CARES ACT FRAUD SCHEME (EIDL ADVANCE)
### (False Claims Act, 31 U.S.C. § 3729(a)(1)(A) & (B))

78. Paragraphs 1 through 73 are realleged.

79. In connection with the CARES Act Fraud Scheme (EIDL advance), White:

    a. knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval;

    b. knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.

80. White's false statements made in connection with the CARES Act Fraud Scheme (EIDL advance) were material.

81. White thereby violated the False Claims Act, damaged the United States in amount to be proven at trial, and owes the United States treble its damages and civil penalties for each false and fraudulent claim.

## COUNT III: CARES ACT FRAUD SCHEME (AK CARES GRANT)
### (False Claims Act, 31 U.S.C. § 3729(a)(1)(A) & (B))

82. Paragraphs 1 through 73 are realleged.

83. In connection with the CARES Act Fraud Scheme (AK CARES grant), White:

    a. knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval;

b.      knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.

84.     White's false statements made in connection with the CARES Act Fraud Scheme (AK CARES grant) were material.

85.     White thereby violated the False Claims Act, damaged the United States in amount to be proven at trial, and owes the United States treble its damages and civil penalties for each false and fraudulent claim.

**COUNT IV: CARES ACT FRAUD SCHEME (PPP LOAN)**
**(False Claims Act, 31 U.S.C. § 3729(a)(1)(A) & (B))**

86.     Paragraphs 1 through 73 are realleged.

87.     In connection with the CARES Act Fraud Scheme (PPP loan), White:

a.      knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval;

b.      knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.

88.     White's false statements made in connection with the CARES Act Fraud Scheme (PPP loan) were material.

89.     White thereby violated the False Claims Act, damaged the United States in amount to be proven at trial, and owes the United States treble its damages and civil penalties for each false and fraudulent claim.

//

//

*United States v. Clinton White*
3:26-cv-_____                                    Page 16 of 17

## Requested Relief

WHEREFORE, Plaintiff, the United States of America, demands judgment against Defendant Clinton White as follows:

A.     Declare that White violated the False Claims Act as alleged herein;

B.     Award the United States treble damages and civil penalties as allowed by law; and

C.     Award the United States such other relief as this Court may deem just and proper, together with interest as allowed by law, fees, and costs of this action.

## Demand for Jury Trial

The United States demands a jury trial in this case.

RESPECTFULLY SUBMITTED on May 26, 2026, at Anchorage, Alaska.

MICHAEL J. HEYMAN
United States Attorney


/s/ Seth M. Beausang
Assistant U.S. Attorney
United States of America